IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2002

## STATE OF TENNESSEE v. JESS R. AMONETTE

**Appeal from the Circuit Court for Williamson County**
**Nos. II-11-100 & II-100-10      Timothy Easter, Judge**

---

**No. M2001-02952-CCA-R3-CD - Filed August 29, 2002**

---

Jess R. Amonette appeals from the Williamson County Circuit Court's revocation of his probationary sentence. He claims that the lower court exceeded its discretion in revoking probation and ordering him to serve his sentence in confinement. In case number II-100-10, we notice as a matter of plain error that the sentence expired prior to initiation of revocation proceedings. We therefore reverse the revocation order and dismiss revocation proceedings in that case. In case number II-11-100, the record does not reflect the lower court's findings from which we can determine the basis for its ruling, and we therefore remand for further consideration.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Erik R. Herbert, Nashville, Tennessee, for the Appellant, Jess R. Amonette.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mark K. Harvey, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In case number II-100-10, the defendant pleaded guilty to second-offense driving under the influence, three counts of simple possession of drugs, and one count of possession of drug paraphernalia. For each of these offenses, he received a sentence of eleven months and twenty-nine days, 60 days of which was to be served in confinement. The sentences were to be served concurrently. In case number II-11-100,[1] the defendant pleaded guilty to one count of simple possession of drugs and one count of possession of drug paraphernalia. For the drug offense, he was sentenced to eleven months and twenty-nine days, 60 days of which was to be served in confinement.

---

[1]The docket numbers used herein are as they appear on the trial court's indictments.

For the paraphernalia offense, he was sentenced to serve eleven months and 29 days on probation. These sentences were imposed concurrently to each other but consecutively to the sentences in case number II-100-10. Thus, the defendant's effective sentence was just shy of two years, with the first 60 days being served in confinement.[2]

The defendant came before the court to face allegations of probation violations in both cases after two drug screens revealed the presence of narcotics in his body. Amonette admitted the violation; thus, the only issue before the court was the effect of the violation on the probationary sentences originally imposed.

The evidence presented was as follows. The defendant, by all accounts, fared well on probation from the time of his sentencing on February 28, 2000, until he failed a drug screen more than one year later on May 23, 2001. According to the defendant's testimony, he had completed drug rehabilitation treatment during the earlier portion of his probationary sentence but later relapsed when he was no longer attending follow-up care. He claimed that he voluntarily submitted to an evaluation after the positive screen. He was unable to afford the 30-day inpatient treatment program recommended for him, so he attended some Narcotics Anonymous and Cocaine Anonymous meetings on his own. Nevertheless, he had a second positive drug screen on July 18, 2001. He testified that he was not able to leave his family business for inpatient treatment because a key employee had a stroke in July 2001. Additionally, the defendant's grandfather had undergone heart bypass surgery the previous fall and was unable to work in the business as much as he had in the past. The defendant claimed to have changed the friends with whom he associated as part of his effort to remain off drugs, but he had been at a party when someone unexpectedly had drugs. He was enticed to use drugs and thereafter began using about four to five grams of cocaine a month. He acknowledged that he had not gone to his probation officer or his grandfather for assistance with his drug problem. He claimed that he was too ashamed of his relapse to seek his grandfather's assistance.

The defendant's grandfather testified that the defendant was a valued employee of the family business, which the grandfather owned. He characterized the prospect of the defendant's absence as "devastating" for the business. The defendant's grandfather had not realized earlier that his grandson had a drug problem, but he offered to pay for treatment if the court would allow the defendant another chance.

The defendant's probation officer testified that the defendant had done all that was expected of him save passing the drug screens. She stated that she believed the defendant's sincerity about addressing his drug problem, and she advocated that the defendant be offered a second chance.

Upon receiving the evidence, the court noted the difficulty it faces in dealing with drug-addicted individuals. The court noted further that two individuals who were present in the

---

[2]It appears from the somewhat anomalous wording of the judgment in case II-11-100 that the defendant was to serve a total of 60 days confinement for both sentences.

courtroom that day would be the subject of sentencing hearings later, and these individuals had drug addictions. The court commented that if it extended leniency to Amonette for violating the terms of his probation by using drugs, these other two individuals might not be deterred from further drug use during any probationary period that might be imposed as part of their sentences. The court further commented that Amonette had given his word to the court at sentencing that he would abide by the terms of probation, and he had been warned that a violation would result in revocation. The court did not, however, make any factual findings based upon the evidence presented. For example, the court did not make any determinations relative to witness credibility. The court ordered the probationary sentences in both cases revoked; thus, the defendant was required to serve his sentences in the county jail.

**I**

Although the issue has not been raised in this appeal, we note that the defendant's sentence in case II-100-10 expired prior to initiation of revocation proceedings. The sentence was imposed on February 28, 2000, and the revocation warrant was filed on June 18, 2001. The effective sentence in case II-100-10 was for eleven months and 29 days, which time expired prior to June 18, 2001. Thus, the lower court erred in allowing the state to pursue revocation in that case. *See* Tenn. Code Ann. § 40-35-310 (1997) (trial court may revoke suspension of sentence "at any time within the maximum time which was directed and ordered by the court for such suspension"); *State v. Schafer*, 45 S.W.3d 553, 555 (Tenn. 2001) (trial court generally must revoke probation within probationary period, although issuance of revocation warrant within probationary period will toll passage of time within which court must act); *State v. Larry Ammons*, No. W2001-00834-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Mar. 18, 2002) (lower court erroneously revoked probation in case in which sentence had expired; case remanded for corrected order revoking probation only in unexpired case); *State v. Randall Anthony*, No. W2000-02234-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, July 6, 2001) (probation erroneously revoked in first of two consecutive sentences because defendant had completed service of first sentence prior to issuance of revocation warrant).

At the revocation hearing, the court inquired whether the sentence in case II-100-10 had expired. The state contended that it had not, and the defense essentially conceded that it had not. The state indicated that the judgment forms might have been erroneously prepared, and that if the court believed it was without revocation authority in case II-100-10, then the judgment forms might be the proper subject of amendment for clerical error. However, no such correction was made. Furthermore, all of the defendant's convictions are for Class A misdemeanor crimes, the sentence for which generally is not greater than eleven months and 29 days. *See* Tenn. Code Ann. § 40-35-111(e)(1) (1997). Thus, unless there was an error in recording the correct crimes which formed the basis of the defendant's conviction, the defendant was not eligible for a sentence longer than eleven months and 29 days in case II-100-10.

Accordingly, we reverse the lower court's order revoking probation in case II-100-10.

## II

We now advance to the issue of the propriety of revocation in case II-11-100. The standard of review upon appeal of an order revoking probation is the abuse of discretion standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). For an abuse of discretion to occur, the reviewing court must find that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the terms of probation has occurred. *Id*. at 82; *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The trial court is required only to find that the violation of probation occurred by a preponderance of the evidence. Tenn. Code Ann. § 40-35-311(e) (Supp. 2001). Upon finding a violation, the trial court is vested with the statutory authority to "revoke probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." *Id.* Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id.* § 40-35-310 (1997). The trial judge retains the discretionary authority to order the defendant (1) to serve his sentence in incarceration; (2) to serve the probationary term, beginning anew; or (3) to serve a probationary period that is extended for up to an additional two years. *State v. Hunter*, 1 S.W.3d 643 (Tenn. 1999). The decision of the proper consequence embodies a separate exercise of discretion from the initial finding that a violation has occurred. *See id.* at 647; *State v. Ricio L. Conner*, No. 02C01-9807-CR-00201 (Tenn. Crim. App., Jackson, Oct. 31, 1999); *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. 1995).

By pleading guilty to the allegations of the violation warrants, the defendant conceded that there was an adequate basis for a finding that he had violated the terms of probation. *See State v. Michael Emler*, No. 01C01-9512-CC-00424, slip op. at 4 (Tenn. Crim. App., Nashville, Nov. 27, 1996) (where the defendant admits violation of the terms of probation, revocation by the trial court is not arbitrary or capricious); *State v. Mitzi Ann Boyd*, No. 03C01-9508-CC-00246 (Tenn. Crim. App., Knoxville, Nov. 1, 1996). Thus, the only question we must answer is whether the court abused its discretion in ordering the defendant to serve the remainder of his sentence in the county jail.

In that regard, the record reflects that the lower court was concerned with the need to deter other defendants who might receive probation. The record does not reflect, however, whether the court considered any facts relative to the defendant Amonette's case, such as the court's perception of the defendant's amenability to rehabilitation, sincerity, and the like. Without any such findings in the record, we are unable to know whether the court's decision was a conscientious and intelligent one based upon the facts of the case.[3] *Cf. State v. John Earl Turner*, E2001-01373-CCA-R3-CD (Tenn. Crim. App., Knoxville, July 12, 2002) (record must reflect court's findings relative to probation revocation). This is particularly the case where, as here, the testimony is essentially

---

[3] Thus, we distinguish this case from *State v. Jerry O. Summers*, M2001-01358-CCA-R3-CD (Tenn. Crim. App., Nashville, July 19, 2002), in which the court denied the defendant's request for further probation following revocation based upon *both* "the conclusion that all others in the court will lose respect for the probation program" *and* the individual facts of that case, including the defendant's repeated failures at past rehabilitation.

undisputed, and the only question for the court is the credibility and sincerity of the witnesses who offered that testimony to the court.

This case is one in which the evidence in the appellate record presents at least a basis for extending some leniency to a possibly penitent defendant with a supportive family and probation officer. However, this court, unlike the lower court, was unable to conduct a first-hand assessment of the defendant, his grandfather, and his probation officer at the time of their testimony.[4] As such, the lower court is the proper entity to make appropriate factual findings regarding the believability and reliability of the witnesses' testimony, and ultimately, to rule upon the defendant's bid for further probation.

Accordingly, we reverse the lower court's order revoking the defendant's probation in case II-11-100 and remand with instructions that the court make the appropriate factual findings and enter an order in accordance with those findings. Additionally, for the reasons stated above in section I, we reverse the lower court's order revoking the defendant's probation in II-100-10.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[4]Despite the use of a video record in this case, we decline to use the video as a means of substituting our impressions of credibility for those formed by the trial court.